# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE LONZO TIGNEY, | **)** | Civil Action No. 2: 18-cv-0408 |
| | **)** | |
| Petitioner, | **)** | |
| | **)** | |
| v. | **)** | Chief United States Magistrate Judge |
| | **)** | Cynthia Reed Eddy |
| WARDEN S.C.I. FAYETTE, DISTRICT | **)** | |
| ATTORNEY OF ALLEGHENY | **)** | |
| COUNTY, and THE ATTORNEY | **)** | |
| GENERAL OF THE STATE OF | **)** | |
| PENNSYLVANIA, | **)** | |
| | **)** | |
| Respondents. | **)** | |

## MEMORANDUM OPINION[1]

Petitioner, Maurice Lonzo Tigney ("Tigney"), a state prisoner presently incarcerated at the State Correction Institution - Fayette, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging the Judgment of Sentence imposed on him at Criminal Case No. CP-02-CR-0012277-2012, by the Court of Common Pleas of Allegheny County, on June 14, 2014. (ECF No. 4). For the reasons that follow, the Petition will be denied because none of the grounds for relief merits the grant of federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 8 and 11).

### Factual and Procedural History

This case arises from the fatal shooting of Gary Hager on August 25, 2012.  Tigney was charged with criminal homicide and criminal conspiracy along with co-defendant Darrell Tigney, the Petitioner's father.  The facts surrounding Tigney's underlying conviction are set forth in the Trial Court's Opinion of January 5, 2015. (ECF No. 9-2 at 13-15).  Between March 18, 2014, and March 21, 2014, Tigney and his father were tried together before a jury before the Honorable Beth A. Lazzara.  At the conclusion of the trial, Tigney was convicted of third-degree murder and acquitted of conspiracy.  His co-defendant was acquitted of all charges. On June 4, 2014, Tigney was sentenced to 20 to 40 years of imprisonment. Tigney filed post-sentence motions, which were denied on August 14, 2014.

Tigney timely filed a direct appeal and on July 8, 2015, the Superior Court of Pennsylvania affirmed Tigney's judgment of sentence. *Commonwealth v. Tigney*, 1500 WDA 2014 (Pa. Super. filed July 8, 215) (unpublished memorandum) (ECF No. 9-4 at 1-5).

After an unsuccessful direct appeal, on January 20, 2016, Tigney filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA").  *See* PCRA Petition (ECF No. 9-4 at 7-18; Exh.17).  On January 26, 2016, Judge Lazzaro appointed Scott Coffey, Esquire, to represent Tigney during the PCRA proceedings. (*Id*. at 24; Exh. 18).  On April 29, 2016, Attorney Coffey filed a motion for leave to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc), along with an accompanying no-merit brief.  (*Id*. at 25-38). On May 5, 2016, Judge Lazzaro issued a Notice of Intent to Dismiss (*id*. at 41-42; Exh. 20), to which Tigney filed a pro se response on August 11, 2016.  (*Id*. at 43-53; Exh. 21). The PCRA Court dismissed the PCRA petition on December 13, 2016. (ECF No. 9-5 at 1-2; Exh. 22).

2

On or about January 6, 2017, Tigney filed a *pro se* Notice of Appeal from the dismissal of his PCRA petition to the Superior Court raising four questions for review attacking the discretionary aspects of his sentence and alleging trial counsel ineffectiveness. *See* Tigney's Appellant Brief (ECF No. 9-5 at 33; Exh. 27).   On November 30, 2017, the Superior Court affirmed the order dismissing the PCRA Petition. (ECF No 9-6 at 49-56; Exh. 29).   No further appeals were taken.

Having been denied relief in state court, Tigney filed in this Court a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 raising four claims. Respondents filed an Answer in which they argue that Claims One and Two should be denied based on AEDPA's highly deferential standard of review as both claims were raised on collateral review and denied by the Superior Court on the merits and that Claims Three and Four should be dismissed because they are procedurally defaulted and Tigney cannot overcome the procedural default. (ECF No. 9).

In  January 2019, the Court granted Tigney's request to stay the case while he attempted to retain counsel.  (ECF No. 14).  In March 2019, Tigney requested the stay be extended while he finalized negotiations with counsel. (ECF No. 16). His request was granted and the stay extended until May 31, 2019. (ECF No. 17).  Unsuccessful in securing counsel on his own,  Tigney filed a motion for appointment of counsel on August 21, 2019. (ECF No. 19). That request was denied by the Court and thereafter the stay was lifted and the case reopened.

The Court has reviewed the filings of the parties, as well as the original state court record that was sent to this Court, which includes the transcripts from the preliminary hearing (T12-1618), the trial (T-14-1184), and sentencing hearing (T14-1966). The matter is fully briefed and ripe for disposition.

## The Standard for Habeas Relief under 28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"), "which imposes significant procedural and substantive limitations on the scope" of the Court's review.[2] *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017), *cert. denied*, No. 17-7437, -- U.S.---, 138 S. Ct. 1170 (Feb. 26, 2018). As a result, this Court may not grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings unless the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2). And under the AEDPA standard, the "[s]tate court[s'] relevant factual determinations are presumed to be correct unless the petitioner rebuts [that] presumption by clear and convincing evidence." *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)). AEDPA imposes a "highly deferential" standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt. *Blystone v. Horn*, 664 F.3d 397, 417 (3d Cir. 2011).

---

[2]     The first consideration in reviewing a federal habeas petition is whether the petition was timely filed under AEDPA's one-year limitations period.  28 U.S.C. § 2244(d).  Respondents do not dispute that Tigney's petition was timely filed.

1. <u>Exhaustion of State Remedies</u>

Among AEDPA's procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). When a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002).

Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, to exhaust state court remedies).[3]

---

[3] Traditionally, under Pennsylvania law, exhaustion meant that a claim must be presented to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, *PA*, 959 F.2d 1227, 1230 (3d Cir. 1992). However on May 9, 2000, the Pennsylvania Supreme Court issued Judicial Administration Order 218, which provides that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. . . . " *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam).

5

2. <u>The Procedural Default Doctrine</u>

The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' " *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (quoting 28 U.S.C. § 2254(b)(1)(B)(i)). "However, claims deemed exhausted because of a state procedural bar are procedurally defaulted. . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Thus, claims are procedurally defaulted where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule. . . ." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice resulting from the alleged constitutional violation." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 375 (3d Cir. 2018) (quoting *Davila v. Davis*, -- U.S. ---, 137 S. Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)), *cert. denied*, -- U.S. ---, 139 S. Ct. 1613 (2019).[4]   To

---

[4]      A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a "miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365,375 n.11 (3d Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)). Tigney does not argue that his defaulted claims should be excused because failure to do so would result in a miscarriage of justice. Further, the Court concludes that nothing in the record suggests that Tigney could meet the *Schlup* test. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that the miscarriage of justice standard "requires 'new reliable evidence - whether it be exculpatory scientific evidence,

demonstrate "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner satisfies the "prejudice" requirement by establishing that the trial was "unreliable or . . . fundamentally unfair" because of a violation of federal law. *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993). The burden lies with a petitioner to demonstrate circumstances that would serve to excuse a procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

### Discussion

Tigney raises four grounds for habeas relief. In Claims One and Two, he challenges trial counsel's failure to present mitigated evidence at sentencing and the trial court's failure to consider all of the sentencing factors. In Claim Three, Tigney alleges that trial counsel was ineffective for allowing inflammatory photographs to be shown to the jury. And in Claim Four, Tigney contends that his due process rights were violated due to counsel's waiver of Tigney's rights to be present during the reading of the final jury instructions and that he was prejudiced by his attorney's decision to remove the self-defense instruction from the jury instructions.

Tigney's ineffective assistance of counsel ("IAC") claims are grounded in rights guaranteed under the Sixth Amendment. Clearly established federal law governing ineffectiveness claims is set forth in the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Premo v. Moore*, 562 U.S. 115, 121 (2011). Under the first prong of *Strickland*, often referred to as the "performance" prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. Under the second prong, often

---

trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'").

referred to as the "prejudice" prong, a petitioner must demonstrate that the deficient performance prejudiced him, meaning that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 692. Although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. *See also Mathias v. Superintendent Frackville SCI*, 876 F.2d 462, 477 (3d Cir. 2017).

The United States Court of Appeals for the Third Circuit has held that Pennsylvania's test for assessing IAC claims is not contrary to *Strickland. Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *see also Commonwealth v. Pierce,* 527 A.2d 973, 976 (Pa. 1987) (expressly stating that Pennsylvania follows the *Strickland* standard of review). Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of *Strickland. Jacobs v. Horn*, 395 F3d 92, 106 n.9 (3d Cir. 2005). That is, a petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

When resolving an IAC issue, the question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Strickland,* 466 U.S. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms'." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 699). In evaluating counsel's performance, the court must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound

8

strategy. *Strickland*, 466 U.S. at 689. Counsel's actions are presumed to reflect a sound strategy unless the petitioner shows "no sound strategy . . . could have supported" them. *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). The relevant inquiry is not whether Petitioner's counsel was prudent, appropriate, or perfect. *Burger v. Kemp*, 483 U.S. 776, 794 (1987). Rather, the focus is simply to ensure the proceedings resulting in petitioner's conviction and sentence were fair. *See Strickland*, 466 U.S. at 684-85. Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). The Court will address Tigney's claims in turn.

> Claims One and Two – Trial Counsel's Alleged Failure to Present Mitigated Evidence at Sentence and the Trial Court's Failure to Consider All of the Sentencing Factors.

> In his first claim for relief, Tigney asserts:

> all prior counsel failed to present mitigated evidence that exist in petitioner's pre-sentence investigation report (PSI) and police report for the Judge to consider during the fashioning of his sentence. Counsel failed to ensure the sentencing was fully equipped to consider all of the requsit (sic) aspects in crafting a sentence in accordance with the law.

Pet. at ¶ 12. And in his related second claim for relief, Tigney contends that the Trial Court failed to consider all of the sentencing factors mandated by statute. Tigney raised these claims in his PCRA petition and the Superior Court denied the claims on their merits. As a result, this Court's review is governed by AEDPA's standard of review.

> In rejecting these claims, the Superior Court quoted from the Rule 1925(a) Opinion of the PCRA Court:

> In the event that [Appellant] is referring to trial counsel's purported ineffectiveness for failing to "advocate and advance mitigat[ing] factors" relating to [Appellant's] character and remorse at sentencing, such a claim [] lacks arguable merit. [Appellant] fails to specify the existence of any character witnesses that would have been willing and able to testify at his sentencing

hearing.  Even if such character witnesses existed, [Appellant] is unable to show that he suffered actual prejudice due to their absence at sentencing.  Indeed, this court presided over the trial and was well-familiar with the facts of the case, including the fact that [Appellant] did not flee from the scene after he killed the victim.  However, given the cold, calculated, and serious nature of [Appellant's] offense conduct, the victim impact evidence presented at sentencing, and the other relevant sentencing factors, the court is confident that any character testimony would not have impacted the court's determination as to his sentence.  Similarly, [Appellant's] general "remorse" for his crimes also was considered by this court, but was insufficient to warrant a lesser sentence.  The court also notes that the facts adduced at trial completely rebutted [Appellant's] claim that he killed the victim to protect his father, and the jury completely rejected any such notion that [Appellant] shot the victim three times in the back in order to protect his father.

Additionally, the court was already aware of certain mitigating factors relating to [Appellant], his history, and his background, and it did not need trial counsel to reiterate those factors at sentencing.  For example, the court had reviewed the presentence report prior to sentencing and it was aware of the fact that [Appellant's] mother had passed away months before the incident.  The mitigating evidence, however, was insufficient to overcome the other, more compelling sentencing factors which warranted the standard range sentence of 20-40 years.  Accordingly, this court did not commit error in finding that [Appellant's] sentencing claims did not contain arguable merit[.]

*Commonwealth v. Tigney*, memorandum at 5-6 (Pa. Super. filed November 30, 2017) (ECF No. 9-6 at 53-54).  Moreover, the Superior Court noted,

our Supreme Court 'has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed'."  ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citing ***Commonwealth v. Devers***, 546 A.2d 12, 18-19 (Pa. 1988)).

*Id*. at 5.

Viewing the Superior Court's disposition of these claims through the deferential lens of AEDPA, the Court has no hesitancy in concluding that Tigney has failed to carry his burden to persuade this Court that the Superior Court's disposition was unreasonable, yet alone even incorrect.  As noted above, to prevail on a claim that the state court has adjudicated on the

merits, Tigney must demonstrate that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold"). Tigney has not met that high threshold, and therefore these claims must be denied.

> Claim Three – The Trial Court Abused Its Discretion When It Admitted Inflammatory Photographs and Trial Counsel Was Ineffective in Allowing The Inflammatory Photographs to be Shown to the Jury

In his third claim for relief, Tigney claims that (i) the trial court abused its discretion in admitting inflammatory photographs of the victim and (ii) his counsel was ineffective in failing to object to the photographs being shown to the jury. Respondents correctly point out that Tigney has procedurally defaulted both these claims as he never raised either claim in the state courts. Because the claims are procedurally defaulted they may not form the basis for habeas relief unless Tigney can establish cause and prejudice or actual innocence.  As explained below, neither exception to procedural default applies.

Tigney offers contradictory arguments for "cause" to excuse the default.  First he states that "[t]his is the first time this issue is being litigated due to recently developed information." Yet, he does not explain what the "recently developed information" is or when it was discovered. He also argues that "counsel failed to litigate the issue."  The Court takes this argument to be an invocation of the equitable exception rule to procedural default announced in *Martinez*. However, Tigney cannot invoke the *Martinez* equitable exception rule because this issue was not raised in Tigney's pro se PCRA Petition and, after counsel filed a no-merit letter and was

11

allowed to withdraw, Tigney represented himself and never raised the issue. The limited application of the *Martinez* exception only applies if there was no counsel or counsel was ineffective in the initial-review collateral proceeding, neither of which occurred in this case.

However, even if this claim was not procedurally defaulted, the claim that the Trial Court abused its discretion in admitting the photographs is simply not cognizable in a federal habeas proceeding because it implicates a violation of state evidentiary rules, not federal law. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or on a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S 27, 32 (2004). Tigney does not claim that the Trial Court's evidentiary ruling violated his constitutional rights; rather, he has presented the claim solely as a state evidentiary challenge, i.e., the photographs were cumulative of other evidence and their probative value did not outweigh the likelihood of inflaming the minds and passions of the jurors.[5] Accordingly, the issue is not a proper claim subject for federal habeas review.

The Court also finds that the related ineffective assistance of counsel claim fails. From a review of the trial transcript, it appears six photographs were admitted – four autopsy photographs and two scene-of-the-crime photographs. The trial transcript reflects the following exchange occurred between the Court and all counsel, outside the presence of the jury:

---

[5]     Pennsylvania Rule of Evidence 403, Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, Or Other Reasons, states: "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

MS. PHILLIPS:  Lisa Phillips on behalf of Maurice Tigney.  My understanding is Karl Williams is the first witness and they will be using photographs to aid his testimony.  We had discussed the video surveillance of the shooting and I would ask for the inflammatory video instruction just to warn the jury what they are going to see.

THE COURT:  I usually give that in my closing but if you want me to tell them some of the photos might be graphic and they should not let them affect their emotions and decision in this case –

MS. PHILLIPS:  I'm asking that.

MR. CHERNOSKY:  No objection with regard to the photos.  The video is what the incident is.  If it is inflammatory and seems violent it is because it is violent.

MS. PHILILPS:  I'm asking not let the violent nature cloud their judgment, the similar instruction of the inflammatory photographs.

THE COURT:  Okay.

MR. FARRELL:  Just so you know, Mr. Chernosky has gone over all his photographs with us.  I have no objection to any of the photographs that he has shown me and we are all on the same page.  Normally you ask if you have any objections.  We have no objections.

. . . .

MR. FARRELL:  They are not that bad.

MS. PHILLIPS:  No.

N.T., 3/19/14 at 15-16.  Per the discussion with counsel, prior to the testimony of Dr. Williams, the Trial Court gave the following cautionary instruction, emphasizing to the jury that its decision should not be influenced by emotion:

> Ladies and gentlemen of the jury – the photographs show the nature of the wounds of the deceased.  They are not pleasant photographs to look at and may be disturbing to you.  You should not let the photographs stir up your emotion to the prejudice of either defendant.  Your verdict must be based on a rational and fair consideration of the evidence and not on passion or prejudice.  We're asking you not to avert your eyes.  That is evidence that you need to look at and consider as part of this testimony and it may disturb you but it should not make you  think anything adversely towards either of the defendants.

13

N.T., 3/19/2014 at 74-75.  Here, the record is clear that defense counsel effectively represented Tigney by requesting a cautionary instruction.  Tigney has not shown that counsel's performance fell below the *Strickland* standard. Further, Tigney cannot show he was prejudiced as any potential for the jury's passions to be inflamed was ameliorated by the cautionary instruction given by the Trial Court.

Further, Tigney cannot succeed in carrying his heavy burden to invoke the second exception to the procedural default of a fundamental miscarriage of justice.  He points to no new evidence of his actual innocence and it is hard to imagine the existence of any such evidence given the record before this Court.  *Coleman v. Greene*, 845 F.3d 73 (3d Cir. 2017).[6]

Having procedurally defaulted these claims and having failed to carry his burden to overcome the procedural default by establishing either cause, as the underlying claim lacks merit and is therefore not substantial, or a fundamental miscarriage of justice, Claim Three will be denied as it does not provide a basis for relief in these federal habeas proceedings.

---

[6]     In *Coleman v. Greene*, the United States Court of Appeals for the Third Circuit explained that,

> The fundamental miscarriage of justice exception is narrow.  The Supreme Court has applied it "to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'."  *McQuiggin*, 113 S.Ct. at 1933 (alteration in original) (quoting *Schlup*, 513 U.S. at 329, 115 S.Ct. 851).  Put differently, the exception is only available when a petition presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  Id. at 1936 (quoting *Schlup*, 13 U.S. at 316, 115 S.Ct. 851).  In *Schlup*, the Supreme Court emphasized that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."

*Coleman*, 845 F.3d 73, 76 (3d Cir. 2017).

<u>Claim Four - Trial Counsel's Alleged Decision to Waive Tigney's Right to be
Present During the Reading of the Final Jury Instructions</u>

In his fourth and final claim for relief, Tigney contends his due process rights were violated due to counsel's waiver of Tigney's rights to be present during the reading of the final jury instructions.  He further alleges he was prejudiced by his attorney's decision to remove the self-defense instruction from the jury instructions, which he argues would not have happened if he had been present.

Tigney previously raised the issue of his absence from the jury instruction conference on direct appeal.  The Trial Court and the Superior Court considered the claim and dismissed it on the merits.  To the extent that Tigney intended to bring that argument in this habeas case, same is denied.

The right of an accused to be present and participate during all critical stages of the trial is basic and fundamental. *United States v. Gagnon*, 470 U.S. 522, 526 (1985)(per curiam) ("The constitutional right to presence is rooted in the Confrontation Clause of the Sixth Amendment but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.")(citation omitted); *Rushen v. Spain*, 464 U.S. 114 (1983).[7] A defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) A "critical stage" in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage. *Mempa v. Rhay,* 389 U.S. 128, 135 (1967); *Commonwealth v. D'Amato*, 856 A.2d

---

[7]     Similarly, Article I, § 9 of the Pennsylvania Constitution guarantees the right of the accused to be present in the courtroom at every stage of a criminal trial.

806, 822 (Pa. 2004) (defining "critical stage of a criminal proceeding" as any stage "at which substantive rights may be preserved or lost").

Yet the right to be present is not absolute; this, constitutional right is not guaranteed "when presence would be useless, or the benefit but a shadow." *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 106–07 (1934).  Due process does not require a defendant's presence where "there is no indication that [the defendant] 'could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending." *Stincer*, 482 U.S. at 747 (quoting *Gagnon,* 470 U.S. at 527).

Tigney conceded before the Superior Court that his presence would not have contributed to the fairness or accuracy of the proceeding.  Viewing the Superior Court's disposition of the claim through the deferential lens of AEDPA, the Court has no hesitancy in concluding that Tigney has failed to carry his burden to persuade this Court that the Superior Court's disposition was unreasonable.

Moreover, the claim as stated in the habeas petition is without merit.  Tigney now seems to be challenging his counsel's decisions to (i) allegedly waive Tigney's presence during the reading of the final jury instructions to the jury and (ii) remove a self-defense jury instruction, both of which are being raised for the first time in this federal habeas petition.  Because the claims are procedurally defaulted they may not form the basis for habeas relief unless Tigney can overcome the default by establishing either cause or a fundamental miscarriage of justice.  As explained below, neither exception to procedural default applies as both claims lack merit.

Although Tigney argues that he was not present when the final jury instructions were given to the jury, Tigney has offered nothing to substantiate his claim.  The transcript confirms that he was not present during the jury instruction charge conference (N.T., 3/20/20114 at 164),

16

but it appears that Tigney was present when the final instructions were given to the jury. (*Id.,* at 285-352).

The trial transcript also reflects that counsel consulted with Tigney prior to requesting that the instruction on self-defense be withdrawn and that Tigney voiced no objection to counsel's representation to the Court:

> THE COURT:  I gave you all 9.501 [self-defense instruction] earlier.  I don't think we decided if any changes needed to be made in that because at that point you weren't requesting that.  Do you wish to take a look and tell me if there are any issues with it?  . . . .
>
> . . . .
> MS.  PHILLIPS:  May I have a moment with my client, Your Honor?
>
> THE COURT:  Certainly.
>
> . . .
> (Discussion off the record.)
>
> MS. PHILLIPS:  <u>Your Honor, after consulting with my client I am requesting that 9.501 not be read to the jury.  I will not be arguing self-defense.</u>
>
> THE COURT:  All right, it is back out. . . .

N.T., 3/20/2014, at 217-19 (emphasis added).

For all these reasons, Count Four will be denied as the default cannot be excused since the claims lack merit and are therefore not substantial.  *Martinez*, 566 U.S. at 13-15.

## Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Applying that standard here, the Court concludes

that jurists of reason would not find it debatable whether Tigney's petition fails to state a valid

claim of the denial of a constitutional right.  For these reasons, a certificate of appealability will

be denied.

### Conclusion

For all of the above reasons, the Petition for a Writ of Habeas Corpus will be denied.

Further, as there is no basis upon which to grant a certificate of appealability, a certificate of

appealability likewise will be denied.   An appropriate Order follows.


Dated:  October 20, 2020                            s/ Cynthia Reed Eddy
                                                    Cynthia Reed Eddy
                                                    Chief United States Magistrate Judge



cc:   **MAURICE LONZO TIGNEY**
       LQ-3071
       S.C.I. Fayette
       48 Overlook Drive
       LaBelle, PA 15545
       (via U.S. First Class Mail)

       **Alicia H. Searfoss**
       Office of the District Attorney of Allegheny County
       (via ECF electronic notification)